UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAWN R. MARI, | ) | CIVIL ACTION NO. 4:21-CV-887 |
| *On Behalf of Roberto Mari (deceased)* | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | (ARBUCKLE, M.J.) |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Defendant | ) | |

MEMORANDUM OPINION

## I.   INTRODUCTION

Plaintiff Dawn Meri, an adult who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her deceased husband Roberto Mari's application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).[2]

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); s*ee also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] Roberto Meri died on December 31, 2021, while this case was pending. (Doc. 25).

This matter is before me upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 11). After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is not supported by substantial evidence. Accordingly, the Commissioner's final decision will be VACATED and this case will be REMANDED for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## II.  BACKGROUND

To understand the single issue in this case that requires remand the court begins by noting that Mr. Mari has filed at least two separate claims for disability insurance benefits. The first was filed in 2014 and denied in 2017. No appeal was taken. Then in 2019 a second application was filed. That application was initially denied in 2020 and became final in 2021. This appeal to the court followed.

In the period from 2014 to 2021 numerous challenges to the authority of federal agencies based on the Appointments Clause were working their way through the federal courts. As a result of those successful challenges Mr. Mari demands a do over of his 2017 denial and asserts it was error for the ALJ in 2021 to not re-open the earlier denial. For reasons explained in this opinion the court disagrees, but that does not end this analysis.

In the first case the ALJ found that Mr. Mari's impairments were severe, but he was not disabled within the meaning of the Social Security Act. The 2017 decision examined the evidence using the familiar five-step sequential evaluation process. The ALJ in the second case got to step two, found no "severe impairment" and stopped. The ALJ limited his decision to the period beginning the day after the period of the first denial. The ALJ in this second case failed to explain how he arrived at his conclusion that Mr. Mari's impairments were "not severe" only one day after the earlier decision found that they were. The second opinion claimed to cover the period from the alleged onset date in 2014 but limited the analysis of the medical record to the period from the day after the first decision to the end of insured period, a gap of only eight months.

The court agrees with the ALJ that benefit eligibility is limited to that eight-month period, but finds it was error to not explain how he reconciled the 2020 step two denial with the prior ALJ decision that the same impairments were severe only one day earlier. The ALJ should have, but did not consider the prior ALJ finding and explain his consideration of that finding.

## III.   DETAILED PROCEDURAL HISTORY

On October 1, 2014, Mr. Mari protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 57). In this

application, Mr. Mari alleged he became disabled on October 21, 2013, when he was forty-four years old. (Admin. Tr. 64).

On March 5, 2015, Mr. Mari's application was denied at the initial level of administrative review. (Admin. Tr. 57). On April 27, 2015, Mr. Mari requested an administrative hearing. *Id*.

On January 31, 2017, Mr. Mari appeared *pro se* and testified during a video hearing before Administrative Law Judge Susan L. Torres ("ALJ Torres"). *Id*. On April 19, 2017, the ALJ issued a decision denying Mr. Mari's application for benefits. (Admin. Tr. 65).

When Mr. Mari was notified of the unfavorable ALJ decision, he was also notified of his right to appeal and was given instructions on how to file an appeal. (Admin. Tr. 54-56). Mr. Mari did not seek review of the April 19, 2017 decision with the Appeals Council. The Appeals Council did not review the decision on its own. Mr. Mari did not appeal the ALJ's decision to a federal district court.

On May 13, 2019, Mr. Mari protectively filed a second application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 25). In this application, Mr. Mari alleged he became disabled on February 21, 2014. However, the ALJ noted that, on April 14, 2017, a prior application for benefits was denied by an ALJ after a hearing. The ALJ considered the earliest possible onset

date in the current case to be April 15, 2017. In the conclusion of his decision, the ALJ indicated that he assessed the claim based on Mr. Mari's alleged onset date (February 21, 2014). *Id.*; *see also* (Admin. Tr. 27) (concluding that Mr. Mari was not disabled "at any time from February 21, 2014 through December 31, 2017). In the body of the decision, the ALJ appears to assess the claim based on the April 14, 2017 date. (Admin. Tr. 30) ("The medical record does not demonstrate the claimant suffered any more than mild restrictions upon his ability to perform work-related functional activities on a regular and continuing basis between April 15, 2017, the date after the claimant's most recent unfavorable decision, and December 31, 2017, the date last insured.").

In his May 2019 application, Mr. Mari alleged he was disabled due to the following conditions: dissection of aorta descending; peripheral artery disease; Ehlers-Danlos syndrome type 4, hypertension, limited mobility of blood flow of legs, and fatty liver disease. (Admin. Tr. 152). Mr. Mari alleges that the combination of these conditions affects his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks and concentrate. (Admin. Tr. 189). Before the onset of his impairments, Mr. Mari worked in the restaurant industry. (Admin. Tr. 165).

On July 22, 2019, Mr. Mari's application was denied at the initial level of administrative review. (Admin. Tr. 25). On December 30, 2019, Mr. Mari requested an administrative hearing. (Admin. Tr. 25).

On July 7, 2020, Mr. Mari, assisted by his counsel, appeared and testified during a telephone hearing before Administrative Law Judge Randy Riley ("ALJ Riley"). (Admin. Tr. 25). On July 27, 2020, the ALJ issued a decision denying Mr. Mari's application for benefits. (Admin. Tr. 30). On September 29, 2020, Mr. Mari requested that the Appeals Council review the ALJ's decision. (Admin. Tr. 139).

On January 28, 2021, the Appeals Council denied Mr. Mari's request for review. (Admin. Tr. 1).

On May 14, 2021, after receiving permission to delay the appeal, Mr. Mari filed a complaint in the district court. (Doc. 1). In the complaint, Mr. Mari alleged that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the law. (Doc. 1). As relief, Mr. Mari requests that the court reverse the Commissioner's final decision and award benefits, or in the alternative remand this matter to the Commissioner for a new administrative hearing. (Doc. 1).

On September 23, 2021, the Commissioner filed an answer. (Doc. 14). In the answer, the Commissioner maintains that the decision holding that Mr. Mari is not

entitled to disability insurance benefits was made in accordance with the law and is supported by substantial evidence. (Doc. 14). Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 15).

Shortly before his brief was filed in this case, Mr. Mari died. His widow was substituted as Plaintiff in this case. Plaintiff's Brief (Doc. 21), the Commissioner's Brief (Doc. 24), and Plaintiff's Reply (Doc. 29) have been filed. This matter is now ready to decide.

## IV.    STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the principles governing Social Security Appeals.

### A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but

more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It

Page 8 of 25

means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

In practice, this is a twofold task. First, the court determines whether the final decision is supported by substantial evidence. To accomplish this task, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . ."). In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

Second, the court must ascertain whether the ALJ's decision meets the burden of articulation the courts demand to enable judicial review. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.

*Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

## B. STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[3] To satisfy this requirement, a claimant must have a severe

---

[3] Throughout this Opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on July 22, 2020.

physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's

medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

## V.    DISCUSSION

Plaintiff raises the following issues in her statement of errors:

(1)    The Commissioner under whom the ALJ issued the final decision serve a longer term than the President and was removable only for cause, in violation of the separation of powers; therefore, the decision is constitutionally defective and should be reversed.

(2)    Plaintiff's 2014 application was denied by an ALJ who lacked a constitutional appointment a required by the Appointments Clause; the ALJ erroneously found that the April 14, 2017 ALJ decision on Plaintiff's first application was res judicata despite his knowledge of the Appointments Clause violation, and consequently failed to consider the evidence of Plaintiff's disability prior to that date.

(3)   The ALJ erroneously found that Plaintiff had no severe impairments prior to the date last insured, at least in part because he erroneously failed to consider evidence of those impairments from the period prior to April 15, 2017, and thus erred as a matter of law.

(Doc 21, p. 5).

It is this third statement of error that persuades the court to remand. To understand the remand decision the court will examine both the first and second ALJ decisions in some detail.

**A.     THE ALJ  DECISIONS DENYING MR. MARI'S APPLICATIONS**

**1.     *April 2017 ALJ Decision Denying First Application***

In her April 2017 decision, ALJ Torres found that Mr. Mari met the insured status requirement of Title II of the Social Security Act through December 31, 2017. (Admin. Tr. 59). Then, Mr. Mari's application was evaluated at steps one through five of the sequential evaluation process.

At step one, ALJ Torres found that Mr. Mari did not engage in substantial gainful activity at any point between October 21, 2013 (Mr. Mari's alleged onset date) and April 19, 2017 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 59).

At step two, ALJ Torres found that, during the relevant period, Mr. Mari had the following medically determinable severe impairments: type B aortic dissection; Ehlers-Danlos syndrome; obesity, and hypertension. (Admin. Tr. 59).

At step three, ALJ Torres found that, during the relevant period, Mr. Mari did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 60).

Between steps three and four, ALJ Torres assessed Mr. Mari's RFC. ALJ Torres found that, during the relevant period, Mr. Mari retained the RFC to engage in sedentary work as defined in 20 C.F.R. § 404.1567(a) except:

> He is limited to occasional balancing, stooping, kneeling, crouching or crawling. The claimant should avoid concentrated exposure to fumes, odors, dust, gases and poor ventilation. The claimant should avoid all exposure to extreme cold and extreme heat. Furthermore, he should avoid all exposure to hazards such as heights and moving machinery on the ground like forklifts.

(Admin. Tr. 60).

At step four, ALJ Torres found that, during the relevant period, Mr. Mari could not engage in his past relevant work as a fast-food manager or pizza baker. (Admin. Tr. 63).

At step five, ALJ Torres found that, considering Mr. Mari's age, education and work experience, Mr. Mari could engage in other work that existed in the

national economy. (Admin. Tr. 64). To support her conclusion, ALJ Torres relied on testimony given by a vocational expert during Mr. Mari's administrative hearing and cited the following three representative occupations: cashier II, DOT #211.462-010; inspector, DOT #739.687-182; and assembler, DOT #713.684-094. *Id.*

### 2.    *July 2020 ALJ Decision Denying Second Application*

In his July 2020 decision, ALJ Riley found that Mr. Mari met the insured status requirement of Title II of the Social Security Act through December 31, 2017. (Admin. Tr. 27). Then, Mr. Mari's application was evaluated at steps one and two of the sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4)(ii) ("If [the claimant does] not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that [the claimant is] not disabled.").

At step one, ALJ Riley found that Mr. Mari did not engage in substantial gainful activity at any point between February 21, 2014 (Mr. Mari's alleged onset date) and December 31, 2017 (Mr. Mari's date last insured). (Admin. Tr. 27). This finding, however, is not based on the alleged onset date the ALJ set to account for the prior ALJ decision. (Admin. Tr. 25) (finding that the earliest possible onset date is April 15, 2017).

At step two, ALJ Riley found that, Mr. Mari had the following medically determinable impairments: history of type B aortic dissection, Ehlers-Danlos syndrome, obesity, and hypertension. (Admin. Tr. 28). Then, ALJ Riley found that none of these impairments were severe. In doing so, ALJ Riley explained:

> The claimant alleges disability due to peripheral arterial disease, Ehlers-Danlos syndrome, hypertension, and fatty liver disease (Exhibit B1E). Due to his impairments, the claimant stated he has difficulty lifting, squatting, bending, reaching, walking, sitting, kneeling, climbing stairs, completing tasks, and concentrating. He noted he is unable to work because he cannot lift more than 50 pounds and because he suffers from chronic bilateral leg pain and chest pain (B5E). At the hearing, the claimant testified he was capable of walking no longer than 15 minutes and became dizzy as a result of the side effects of his prescribed medications (Hearing Testimony).
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could have reasonably been expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent for the reasons explained in this decision.
>
> The medical evidence does not support the allegations regarding the intensity, persistence, and limiting effects of the claimant's impairments.
>
> Though the claimant has the burden to produce evidence of his impairments, the record shows that prior to the claimant's date last insured, the claimant submitted evidence of only two medical evaluations. The first was treatment for a human bite (Exhibit B1F, page 7) which the claimant received only a single outpatient hospital treatment and the second was for complaints of hematemesis (Exhibit B1F, page 13). The record reveals no evidence prior to the claimant's

date last insured for any treatment of his chronic medical conditions of aortic dissection, Ehlers-Danlos syndrome, obesity, or hypertension.

Additionally, during these two examinations, the claimant's blood pressure was recorded as grossly normal if not slightly low, at 102/70 (Exhibit BF, page 9) and 120/80 (Exhibit B1F, page 15). The claimant's cardiovascular signs were noted as regular and normal (Exhibit B1F, page 15) and the claimant was able to demonstrate normal range of motion, no evidence of any focal neurological deficits, normal sensory perception, and no difficulty with ambulation (Exhibit B1F, pages 15-16).

CTA imaging showed no evidence of any acute cardiopulmonary abnormality (Exhibit B1F, page 16).

In May 2018, after the claimant's date last insured, the claimant was noted to have been last seen by the vascular surgery clinic in 2016. During the intervening period, the claimant admitted to having no new symptoms of claudication [i.e. limping] (Exhibit B1F, page 27).

The medical record does not demonstrate the claimant suffered any more than mild restrictions on his ability to perform work-related functional activities on a regular and continuing basis between April 15, 2017, the day after the claimant's most recent unfavorable Administrative Law Judge decision, and December 31, 2017, the date last insured.

(Admin. Tr. 29-30).

### B.   WHETHER ALJ RILEY'S ASSESSMENT OF MR. MARI'S IMPAIRMENTS AT STEP TWO IS SUPPORTED BY SUBSTANTIAL EVIDENCE

At step two of the sequential evaluation process, the ALJ considers whether a

claimant's impairment is (1) medically determinable or non-medically determinable,

and (2) severe or non-severe. 20 C.F.R. § 404.1520(a)(4)(ii); SSR 85-28, 1985 WL

56856.

Page 17 of 25

An impairment, or combination of impairments, is not severe if it does not significantly limit a claimant's ability to do basic work activities. 20 C.F.R. § 404.1522(a); *see also* 20 C.F.R. § 404.1522(b) (defining basic work activities). Conversely, an impairment is "severe" if it *does* significantly limit a claimant's physical or mental ability to do basic work activities. The phrase, "significantly limits," however is not synonymous with "disability." Rather, the ALJ's analysis at step two is a threshold test designed to screen out *de minimis* claims.

Plaintiff argues that the ALJ's evaluation at step two is not supported by substantial evidence because the ALJ disregarded hundreds of pages of medical evidence and considered only two recent medical examinations. Specifically, Plaintiff contends:

> In the instant case, the ALJ found that Plaintiff suffered from several medically determinable impairments during his insured period, but erroneously found that none of them were severe (R. 28-30). The ALJ noted that "prior to the date last insured, the claimant submitted evidence of only two medical evaluations," "no evidence . . . for any treatment of his chronic medical conditions of aortic dissection, Ehlers-Danlos syndrome, obesity, or hypertension" (R. 29). However, as discussed in Section II supra, the ALJ improperly limited the period he considered and refused to consider the evidence from the insured period prior to April 15, 2017, based on his erroneous application of res judicata. It appears from the prior ALJ's decision that Mr. Mari suffered two aortic dissections, in 2013 and 2014 (R. 61). "Aortic dissection is a serious condition and may be fatal if not treated early . . . . A dissection of the aorta occurs when a tear develops within its wall. The wall consists of three layers and this tear allows blood to flow in between the inner and middle layers, causing them to separate (dissect) . . . . type

Page 18 of 25

B dissection involves a tear in the descending part of the aorta and may extend into the abdomen." "Contemporary follow-up mortality in patients who survive to hospital discharge with acute type B aortic dissection is high, approaching 1 in every 4 patients at 3 years." This impairment is very serious and quite possibly terminal for Mr. Mari, and yet it was dismissed by the ALJ with barely a mention because he refused to consider the evidence from the period prior to April 15, 2017.

Moreover, Mr. Mari testified at his hearing that, during 2017, he suffered from severe pain, could not walk more than 15 minutes without having to rest, could not lift or carry over 10 pounds, became dizzy from his medications, and had to elevate his legs based on the advice of his physicians, who were "worried that the aorta could pop open" (R. 41-48). Mr. Mari's testimony should have been found consistent with the evidence, and with the nature and severity of his impairments, particularly the aortic dissections which he suffered prior to his date last insured.

In short, the ALJ failed to consider all of the evidence and consequently erred as a matter of law in determining that none of Plaintiff's impairments met the very low threshold of severity at Step Two. The ALJ erroneously applied res judicata to the prior ALJ decision of April 14, 2017, as discussed above. Having made this error of law, the ALJ compounded the error by failing to consider the fact that the same medically determinable impairments he found nonsevere in his decision had been found severe in the April 14, 2017 decision, and that this decision was the final decision of the Commissioner for the period through April 14, 2017. The ALJ offered no explanation for how Plaintiff's impairments were severe and imposed significant limitations on his ability to function on April 14, 2017, but somehow became non-severe as of April 15, 2017. There was certainly no medical improvement in Mr. Mari's condition in the space of one day, and the ALJ simply failed to recognize this fact. This case certainly merits "close scrutiny" and should "raise a judicial eyebrow," as the ALJ has failed to apply the proper legal standard in dismissing Mr. Mari's claim on the basis of no severe impairments. *McCrea*, 370 F.3d at 360-61. For these reasons, the ALJ's decision should be reversed, and this case should be remanded for a proper consideration of all of Plaintiff's

impairments through the rest of the sequential evaluation required by the regulations, with consideration of all the evidence from 2014 through 2017.

(Doc. 21, pp. 12-14).

In response, the Commissioner argues that the ALJ's evaluation of Mr. Mari's impairments at step two is supported by substantial evidence. Specifically, the Commissioner contends:

> The relevant evidence before the ALJ shows that Plaintiff's EDS with aortic dissection was stable during the relevant time-period (Tr. 246). His blood pressure was not high (Tr. 239, 245). Plaintiff had normal cardiovascular signs and a normal range of motion, no evidence of any focal neurological deficits, normal sensory perception, and no difficulty with ambulation (Tr. 245-46). He did not even visit his vascular surgeon during the time he alleges to have been disabled and, when he did return 6-months thereafter, the dissection was considered stable; monitoring at 6-month intervals was recommended (Tr. 257). There is simply no relevant evidence to support Plaintiff's contention that his impairments were severe before his date last insured (Pl.'s Br. at 10-14). Thus, Plaintiff has not met the "de minimis" test described in *Newell v. Commissioner of Social Security*, 347 F.3d 541, 546-47 (3d Cir. 2003).

(Doc. 24, pp. 7-8).

The Commissioner does not explain why there is no "relevant evidence" to support Plaintiff's contention that his impairments were severe "before his date last insured" when there is a finding of the Commissioner in 2017 that his impairments were severe.

Page 20 of 25

C.    PROPER USE OF PREVIOUS DECISIONS AS EVIDENCE

Plaintiff also cites to the following cases in support of her argument that ALJ Riley was required to consider the 2017 ALJ decision: *Babyak v. Berryhill,* 385 F.Supp.3d 426 (W.D. Pa. 2019); *Butler v. Colvin*, 2016 WL 2756268 at \*16-17 (M.D. Pa. May 12, 2016); and *Soli v. Astrue*, No. 08-3483, 2010 WL 2898798 (E.D. Pa. July 22, 2010). In each of these decisions, the courts determined that a prior ALJ decision is evidence under 20 C.F.R. § 404.1512(b)(5) and 20 C.F.R. § 416.912(b)(5) and must be considered by the ALJ when evaluating a claim for benefits. *Babyak*, 385 F. Supp.3d at 430 (citing *Zavilla v. Astrue*, 2009 WL 3364853 (W.D. Pa. Oct. 16, 2009) and 20 C.F.R. § 416.912(b)(5)); *Butler*, 2016 WL 2756268 at \*6 (citing *Zavilla*, 2009 WL 3364853 and other similar cases, and holding that the ALJ must consider an earlier ALJ decision because it is relevant evidence); *Soli*, 2010 WL 2898798 at \*6 (citing *Zavilla*, 2009 WL 3364853 and 20 C.F.R. § 404.1512(b)(5)).

In 2017, 20 C.F.R. § 404.1512 and 20 C.F.R. § 416.912 were amended. The old version, applicable to the applications in *Babyak*, *Butler*, and *Soli*, listed "decisions by any governmental or nongovernmental agency about whether or not you are disabled or blind" as a category of "evidence." 20 C.F.R. § 404.1512(b)(5) (effective until March 26, 2017). The applicable version of 20 C.F.R. § 404.1512 no

longer lists categories of evidence. A different regulation—20 C.F.R. § 404.1513—

lists categories of evidence but does not list decisions by other agencies. It does,

however, list the following category of documents as evidence:

> (4)    Evidence from nonmedical sources. Evidence from nonmedical
> sources is any information or statement(s) from a nonmedical
> source (including you) about any issue in your claim. We may
> receive evidence from nonmedical sources either directly from
> the nonmedical source or indirectly, such as forms we receive
> **and our administrative records**.

20 C.F.R. § 404.1513(a)(4) (emphasis added).

Furthermore, ALJs have a general obligation to explain when relevant

evidence that conflicts with the ALJ's conclusion is rejected. *See Cotter v. Harris*,

642 F.2d 700, 706 (3d Cir. 1981). In this case, ALJ Torres' 2017 Hearing Decision

was part of the record before ALJ Riley and is part of the record before this Court.

(Admin. Tr. 31) (list of exhibits before ALJ Riley). Therefore, I find that ALJ Torres'

2017 decision is fairly considered "evidence" under the regulations.

This case involves an unusually short relevant period (approximately eight

months). The ALJ correctly noted that there were only two treatment records from

that eight-month period. Those records did not involve any treatment of the

impairments Mr. Mari alleges are disabling (aortic dissection, Ehlers-Danlos

syndrome, obesity, or hypertension). The state agency consultants determined that

there was not enough evidence from the relevant period to assess severity. (Admin.

Page 22 of 25

Tr. 72, 80). This evidence, considered without the benefit of the 2017 ALJ decision, might have been enough to support ALJ Riley's conclusion. However, when viewed against the backdrop that, one day before the relevant period began in this case the exact same impairments were found to be medically determinable and severe, and absent any evidence of medical improvement, I am compelled to find that the Commissioner's decision is not supported by substantial evidence.

### D.   ERROR REGARDING THE ALJ APPOINTMENT & SEPARATION OF POWERS

Plaintiff raises two constitutional issues in her brief. First, she argues that the July 2020 ALJ decision must be remanded because the appointment of Andrew Saul (the Commissioner at the time this decision was issued) violated separation of powers. Second, she argues that ALJ Riley (who issued the July 2020 decision) should not be permitted to apply *res judicata* to the claim period assessed in the April 2017 decision because ALJ Torres was not properly appointed when Mr. Mari's earlier application was decided. Neither of Plaintiff's constitutional arguments are persuasive.

In response to Plaintiff's separation of powers argument, the Commissioner cites twenty-nine separate trial court decisions (Doc. 24, p. 18 & n. 6) to support the proposition that remand is not required despite the non-removal clause violating the

separation of powers. These cases include two from this District.[4] In those two cases Chief Magistrate Judge Mehalchick found that earlier denials of benefits need not be reopened and reconsidered where the earlier decision was made in violation of the appointments clause. She held that unless there is a showing that the President's inability to remove the Commissioner is directly related to a harm caused to the plaintiff, remand is not required. The court finds the reasoning of these cases very persuasive.

Regarding Plaintiff's appointments clause/res judicata argument, I am not persuaded. In support of her argument, Plaintiff relies on *Lucia v.* SEC, 138 S.Ct. 2044 (2018), *Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148 (3d Cir. 2020), and *Carr v. Saul*, 141 S.Ct. 1352 (2021). In *Lucia*, *Cirko*, and *Carr*, each claimant made a *timely* challenge to an ALJ's authority. Here, Mr. Mari made no such challenge. Because Plaintiff has made no timely challenge to ALJ Torres' authority to issue her decision in 2017 to the Appeals Council or district court, this decision is binding on all parties. 20 C.F.R. § 404.955. An ALJ does, however, have the authority to reopen a final decision in certain circumstances, and a claimant may request that a previous determination be reopened. 20 C.F.R. §§ 404.987, 404.988, 404.989. Given that this

---

[4] *Crossley v. Kijakazi*, No. 3:20-CV-02298, 2021 WL 6197783, at *5-8 (M.D. Pa. Dec. 31, 2021); *Stamm v. Kijakazi*, No. 3:20-CV-02273, 2021 WL 6197749, at *5-7 (M.D. Pa. Dec. 31, 2021).

case will be remanded for another reason, the issue of whether the prior decision can

or should be reopened may be resolved on remand.

## VI.   CONCLUSION

Accordingly, I find that that Plaintiff's request for relief will be GRANTED

as follows:

(1)   The final decision of the Commissioner will be VACATED.

(2)   This case will be REMANDED to the Commissioner for further
proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

(3)   Final judgment will be issued in favor of Dawn Mari.

(4)   An appropriate Order will be issued.

Date: September 27, 2022          BY THE COURT

_s/William I. Arbuckle_
William I. Arbuckle
U.S. Magistrate Judge

Page 25 of 25